May it please the Court, Jack Winters on behalf of Mr. Moyle. In 2002, Mr. Moyle was fired and two or three weeks later he got a letter from his employer who indicated... It would be helpful to me if you would explain to me why all of this matters. I must be missing something somewhere. He has to apply for benefits. Someday he's going to apply for benefits. There's going to be a decision made on that. At that point, you will exhaust remedies, presumably, and we'll find out whether you were right or wrong. Why does it matter? Was this dismissed with or without prejudice? Does it matter if it was dismissed with or without prejudice? Your Honor, you cut to the chase. It doesn't matter, but it was dismissed with prejudice. So why are you appealing it? Why don't we just forget it? Because they're taking the contention. They're taking the position that it does matter, Your Honor. That's why we're here. They're taking the position it does matter. We're more than happy to do exactly that. And the problem is that they're not waiving their statute of limitations defenses. And they're contending that that is... Well, they may have a statute of limitations defense with regard to the piece of paper they sent you, but there's been no claim and there's been no denial of actual benefits, so... I agree with you at the Court 100 percent. And, frankly, we would prefer, as we indicated in our papers, if the dismissal had been without prejudice, we probably wouldn't be here. But it was with prejudice. And I can't go into our attempts otherwise, Your Honor, because they're not part of the records. But, frankly, we shouldn't be here because there was not a claim for benefits made. And it hasn't been denied. And the proper thing should have been, we believe, the district court should have simply said, I'm going to remand you. Did you ask the district court to? No, Your Honor. To be honest with you, Your Honor, it came as a shock that he granted it. Should I ask him afterwards? Should we consider and not do it? No, Your Honor. Judge DeBraw is an excellent judge. I thought that, frankly, I didn't have grounds to go back there and do that. They had suggested during oral argument, Your Honor, that that would be the result. That's what they said would be the result. And perhaps I should have, Your Honor, But the position that was being taken by the parties at that time was that this case was over. This claim was over. The merits had been addressed in some fashion. And this is quite a valuable claim. We haven't gotten into the numbers, Your Honor. And, frankly, in abundance of caution, I did this appeal. I certainly have no desire to do appeals and waste this court's time. We believe this matter should be, if anything, remanded so that a formal claim can be made. They can make the administrative records that they want to make. We can participate in it. Is your client eligible for benefits now? If he chose to do so, Your Honor, he would be, yes. But he hasn't applied. He has not applied. He has reason for not applying. Your Honor, given the court's question, I see no real point in addressing any other issues. I think they've all been handled in the brief. Well, I would like to know why you think there is no applicable plan provision that applies to the current situation. But what I was trying to figure out is why the current situation matters. Well, Your Honor, the provisions of the plan deal strictly with the concept and the provision of making a claim for benefits. They do not in any way, shape, or form does the claim procedure in any way, shape, or form indicate that you have to go through the appellate procedure if you have a question concerning the nature and extent of your disability or your benefit in the future. There's nothing in there. In fact, the provision indicates that the procedure starts when the claim is filed. And that's at page 61 of the appellate record, Your Honor, and that's from the plan. That's when the claims procedure begins. It begins when a claim is filed. Now, most pension plans that I've seen, Your Honor, this one doesn't, indicate that if you have a question concerning your pension benefits, you're supposed to take it to the plan, ask them to review that, do the things that they can do. But this plan doesn't say that. You can't find it anywhere. It has the general language that the plan administrator shall make all determinations as to the right of any person to a distribution under the plans in this handbook, which seems to me general enough to include claims or requests for information about clarification of benefits. Your Honor, it certainly impliedly gives the authority to do so, but, in fact, they did. The plan administrator did make that decision. We're talking about here whether or not there's an obligation to go through an appellate process, an internal administrative review process beyond that initial determination by the plan administrator. So you're basically agreeing that you couldn't just go bopping into court one day and say, I want to know what my rights are under this plan? Absolutely not, Your Honor. But, first of all, if a plan does not have any kind of administrative remedy set up, that's exactly what happens. So Congress has made this clear. It's the plan that has to create the administrative remedy to protect, frankly, the district courts from getting these things right away. But, ultimately, in this case, we contend that there's ambiguity in the appeal process. And under the Mesa case, which they cite, what happened in that case, the court says, look, there's ambiguity about what happened here. So we're going to dismiss it, but we're going to do it without prejudice. And the district court specifically said he can now proceed with his claim below. Now, that did not occur in this case. Instead, we got a decision with prejudice. I would remind the court. Well, with prejudice as to what, though? With prejudice as to the question of whether you had to exhaust this particular claim, but not the merits. No court has decided the merits. You're preaching to the choir here. No, but I'm suggesting that maybe you don't have a problem. You think you have a problem, but with prejudice as to what? Your Honor, I don't believe. I think the court is absolutely correct. I'm not the one contending that. Well, you must be. You take the appeal. No, Your Honor. You want us to change something. Your Honor, we're more than happy. We've offered to go back, make the claim, go this route. But you have to go. Look, you brought a case. You lost the case on the ground that you were supposed to appeal. That case, the one you brought, okay? And that's the ground on which you lost, not on the merits, right? Right. You're taking an appeal. What is it you want us to do? Your Honor, I want you to remand us to the district court. For what purpose? Let the district court decide whether or not the matter should be remanded to the administrator. Why? Why don't you just say, fine, fine, and when I apply for benefits, I will, if I don't get the benefits, I'll come back here and there won't be anything that's raised judicata because nothing's been decided on the merits, and that's fine. Well, Your Honor, I wish we could do that, but I know what's going to happen because we have been told what's going to happen. We will go down, make the claim. It will be denied because they've already made this decision before. I will file another lawsuit. Right. It will go to the district court, and they will come in and argue, this has all been resolved. Here is Mr. Moyle for a third time. That's what's going to happen. I don't want that to happen. The comments from the court today, frankly, are all that I need. Your Honor, I cannot, I'm obliged ethically not to go beyond the record, but I do not file appeals that do not need to be filed, and I don't think it should have had to have been filed, and we attempted to avoid that issue. Did you? Was our mediator service involved in this at all? Absolutely, Your Honor. Absolutely. If there's any point of going back to it? Your Honor, I would always go back to the mediator system here. It's absolutely wonderful, and, again, I'm ethically obliged not to discuss what already happened, but I can guarantee, Your Honor, I don't want to be here wasting this court's time on something, to me, seems clear as day, that I should be able to go back, have them make a formal claim, have it denied, and let them make the record, and we'll go back and start all over again, and that's what we've always wanted to do. Counsel, just to help me think my way through this, the core dispute here, or potential dispute, is whether the applicant is entitled to 18 years of service or 4.1 years of service. That's basically the dispute? Yes, Your Honor. He thinks it's 18, they think it's 4, or at least they've talked about it? Right. Okay. And it's your concern that as of this moment, even though no application for benefits has been made, that it's etched in stone that it's 4 years rather than 18? It's my concern that they will argue that, Your Honor, and cause us to go through the whole process again. I have to add, Your Honor, that I hope I've answered the Court's question. Yeah, I just wanted to make sure it was the 18 versus 4. No, Your Honor, it's not our contention that's etched in stone. It's our belief that it will be their contention that it's etched in stone. As far as I should have said, is it your fear? Yes. But the dispute is 18 versus 4? Absolutely, Your Honor. Nothing else? Nothing else. It is a significant dispute, Your Honor, because it could theoretically involve 1,000 people. Sure. Because it has to do with Liberty Mutual's attempt to convince people to stay at Golden Eagle, and this is a dispute. But, Your Honor, one of the aspects about another reason we brought to the appeal, Your Honor, is that we believe futility has, in fact, been demonstrated. We have alleged, and it hasn't been disputed, that this issue has already been addressed by the plan administrators with regards to other participants, and the same decision has already been reached. In 2003, when the first attorney filed this lawsuit, and it was removed to federal court, district court, in front of Judge Gonzales, they made a motion to dismiss at that time. They did not raise, in 2003, the failure to exhaust administrative remedies. They did not raise it. So there was no reason to think it. So they knew. They were fully aware of what was going on, and if they wanted an administrative hearing that they thought that they needed, they should have raised it in 2003. Your complaint does allege that the representations were made to others, but it doesn't allege that anybody has actually exhausted this. No, no. There has not been an allegation that there's been an exhaustion of administrative remedies by other individuals, Your Honor. That's absolutely correct. We don't know. All right. Thank you for your answer. Thank you. Could you address my question? Why does all this matter? Yes, Judge. May it please the Court. To accept Mr. Moyle's argument would mean that he could wait until 2013, when he becomes 65 years old, to raise this issue. And you don't think he could ordinarily? Under the facts of this. I suppose none of this would have happened, couldn't he? Well. Suppose he had never filed this case. Should I also suppose that he had never made that telephone call in which he knew that there was a dispute? Because I think that therein lies the difference of his case. I don't know if that matters. All right. Let's suppose he didn't make the phone call. He got the letter. That's it. If he was not on notice. No, he was on notice. He got the letter. Okay. He got the letter. But he doesn't have a claim. I think the facts are important in terms of whether he appreciated the significance of what was being communicated to him. And the difficulty for Mr. Moyle in this case is he admits it in his complaint. He admits that he knew the difference in that calculation. But he wasn't eligible for benefits yet. He might not have lived that long. He might not make a claim at all. Whatever argument you have about whether he has to exhaust if he wants a ruling, what in this plan could possibly make him exhaust if he doesn't want a ruling now? Well, because he can't ignore the facts. The facts are that he made a telephone call in 2002 at which time he knew. He admits in his complaint. I understand. But he wasn't making a claim for benefits. What in this plan could possibly put him on an obligation to get the answer to the question before he has a claim for benefits? Because the whole idea of issue preclusion and this court. That's a different question. I'm not up to issue preclusion yet. I'm saying what if he never brought this lawsuit? Could we back up just one step before you respond to the judge's question? Is it your position that the dispute whether Mr. Moyle is entitled to the equivalent of 18 and a half years of service as opposed to four and a half years of service, that dispute has been resolved and he is now stuck with four years? Is that your view? My belief is that, and part of this is my belief, is that when the plan communicated on the telephone with Mr. Moyle when he called, that that person relayed accurately the view of the plan with regard to his factual situation. That's not the question. The question is, is he precluded from any judicial review at any point of that question because of the state of this case at this point? Have we affirmed it? Yes. And why is that? And here's why. In 2013, he files a claim for benefits. The whole idea of exhausting administrative remedies is to, as soon as a person comes into possession of facts, and this Court's precedent bears that out, that place them on notice that there is an issue of a claim or an issue or a dispute of the amount of benefits, whether it's past, present, or future. The idea is to exhaust those remedies when a person has the opportunity to dispute that. So let me see if I can parse that. So your position is not based on the existence of this lawsuit, because we're going back now to where we were before, because you would say that he had the obligation to pursue it as soon as he had that information. He couldn't wait and file a claim later. It had nothing to do with the fact that he chose to file this case. Well, because he chose to file this case, we're here and it's not 2013, so I can't really anticipate what the plan would have done if he had waited and simply raised the issue then. But you're not articulating it as a judicial preclusion question. You're articulating it as some obligation he had under the plan to pursue it now rather than later. Well, that's correct, Your Honor, because he filed the lawsuit seeking a clarification of benefits, of his benefits whenever he elects to receive them, and as counsel indicated, he could receive them now, so this is not some future hypothetical question. Our response to that is, in accordance with Amato and other precedent in this court, he was on notice then. Is there any case that you know of where somebody who had not applied for benefits and was not currently eligible for them was told that they had to, at that point, litigate an exhaust? Is there any case like that? I don't know of a case that only involved future benefits in which they received a telephone call like this one. I do know that the Amato case itself involved a declaration of rights that involved past due benefits as well as future benefits. So the value calculation that was being made in Amato involved future benefits as well as current benefits. Well, that's always true of a pension, because a pension always involves future benefits, but it's a claim that from henceforward I should be paid benefits in a certain consistent amount. And I think that's exactly what this case. This is a pension benefit case. It's a deferred benefit, a defined benefit plan, not some sort of contribution plan. So this is money that's placed in by the company, and he wants to challenge the evaluation of those benefits. Counsel, maybe I'm dense about this, and it wouldn't be the first time and it wouldn't be the only time, but it appears to me that we're in the area between a breach of contract action and a declaratory judgment. Under the law, under certain circumstances, someone can bring a declaratory judgment action before they've suffered the harm that would make their breach of contract action right. But the collateral estoppel res judicata effects of a declaratory judgment, or more important, a declining to give declaratory judgment, are different from that of actually resolving a contract dispute. Now, is it your contention that as of this moment, it has already been judicially determined that Mr. Boyle is entitled to only four-and-a-half years, or credit for only four-and-a-half years of work as opposed to the 18-and-a-half he claims? I don't think it's been judicially determined. But it's been finally determined. I hesitate because I'm not sure what ramifications finally determined would have because our whole position in this lawsuit You can't in the future get a judicial determination of that question different from the one that you've I don't know the answer to that. I'm not the plan fiduciary. I don't know what they would decide at some point in the future. I've indicated I believe that the plan's position with regard to the facts of Mr. Boyle's situation would be determined the same. And this gets back to one of the key reasons why exhaustion is so important. If in 2013 we had none of this and then he files a claim and he raises this issue, no telephone calls, no statements, no anything, then Well, no telephone calls and no statements are two different things. I want you to assume the statement. He got the letter because it's no use assuming that away. He got the letter. Okay. Well, let's also assume the telephone call then. The facts of this case, 11 years after he knew of a different benefit calculation, 16 years after these misrepresentations that he alleges, a benefit plan is supposed to go back and revisit that consequence. Tell me where in the plan you find that application. Where is it? The plan language says in the claim language it says a claim for a benefit or a request for a plan distribution. He's not making either of those. He's not asking you to pay him and he's not asking for a distribution. But claim in, well, in this court's decision in Deegan v. Continental Casualty, it says the court should look at the popular and ordinary meaning of plan terms. I've looked at Black's Law Dictionary. It says to demand as one's own or as one's right. Random House says to demand by or as by virtue of a right. I looked in the law library. He's not demanding. He's sort of asking you, you know, what's your view? He's not demanding anything at this point. He has admitted in the complaint that not only did he make that telephone call, but he understood that there was a disagreement between what he thought he was due and what was available under this plan. What page are you on? Of the complaint. Yes. No, not of the complaint, of the plan. I guess you're on 61, right? That's where you are. All right. Well, and 67 has the language about if a claim for benefit or request for a plan distribution. And our position in this case, Your Honor, is that claim cannot be defined so narrowly as an after-the-fact determination. In fact, the whole idea of equity and determinations by fiduciaries involves in making determinations almost like, as Judge Singleton said, a declaratory statement or a declaratory judgment. In fact, in the Amato case as well as in this complaint, that's exactly how this cause of action is phrased, a declaration of the rights and duties with respect to this plan. So we believe that Judge Sobral got it exactly right, that he looked at this factual situation. Suppose, I'm trying to think of some hypothetical. Suppose somebody doesn't have cancer, and he gets a piece of paper from the plan saying, by the way, we're not covering cancer anymore. Okay? And he thinks that's contrary to the plan, but why ask them? He doesn't think he has cancer. Then he gets cancer. Is that too late now? He can't do anything? He's got notification. No, I see that as totally different. Well, why is it different? He may not live to 2013 to collect his pension. Well, if he didn't live to collect that pension, someone else would collect it for him. Maybe, and maybe not me. In terms of this plan, they do. So his entitlement to it has not been a hypothetical at any point in this case. It was a real, actual controversy in 2002 when he made that telephone call. And with regard to the idea about whether this was dismissed with or without prejudice, this was the third complaint filed by Mr. Moyle seeking these benefits or seeking this determination. The first one he filed, we removed, and he dropped the ERISA claim. He waited two years, filed his first cause of action. Judge Subraw had an informal conference. This is not in the record, but I think the other side would stipulate to it as well, and agreed to file an amended complaint based upon our discussions, based upon the motion that we filed. And he filed an amended complaint, and then we filed another motion. Thank you very much. Thank you. I appreciate your argument. Thank you very much. Did you have a little time? I don't remember. No, you have no time left. Thank you very much. Thank you, Your Honor. Thank you, counsel. Interesting case. The case of Moyle v. Elder Eagle Insurance Corporation is submitted, and we will go to Beck v. City of Upland. Good afternoon, Your Honors. Tom Friedman on behalf of Plaintiff and Appellant Ken Beck. Your Honor, we've offered several different theories, legal theories. They all really come down, I think, to the same thing, that summary judgment was improperly granted in this case for two reasons. There was substantial evidence of both retaliatory animus
judges: Berzon, Ikuta, Singleton